Case number 12-1633, O-N Minerals Co v. Natl Brotherhood of Boilermakers, TN, Lime, Gibson, and Allied Workers, Division, et al. Arguments not to receive 15 minutes per side. Mr. Schwartz will be appelled and may proceed. My name is Charles Schwartz. I represent the appellant union in this case, and I'd like to reserve the final five minutes of my time for rebuttal. Your Honors, at the basic level, this case involves a relatively simple dispute and a relatively simple issue. The dispute is that the company agreed in a collective bargaining agreement with the union to pay certain wages and benefits, and those wages and benefits together form a complete economic package that the employees represented at the union bargained for them, that the company agreed to, and that the employees, we contend, have a right to expect to be paid. That's what the dispute is. The issue in this case, however, is not a resolution of that dispute. The resolution of that dispute, the union contends, is to be resolved in arbitration. That is, has the company agreed to arbitrate the alleged noncompliance with the collective bargaining agreement that underlies this dispute? Well, they've agreed that they're not complying. Pardon? They've agreed that they're not complying, they're not making these payments to the pension trust as required by the collective bargaining agreement. Your Honor, I'm not sure if they are agreeing that they are not complying with it. I had thought they were, but they had indicated in their brief that they believe that they are, in a fashion, complying because, number one, as I understand their argument, they are paying withdrawal liability, which is a statutory liability imposed upon employers who withdraw from underfunded plans in this plan. And they've put the money that would otherwise go to the pension fund into an escrow fund. I believe that's the other argument that they are raising. They're not claiming they want to keep it. I think they're claiming that because, at least as I read their brief, that because they are putting that in the escrow fund, that that means they are complying with the agreement. As I understand their argument, they're claiming that they remain ready and willing to comply with the contractual obligation to pay pension contributions. The problem is they can't do that because the pension trust will no longer accept those contributions. They also say, I think, that you have an option available to you, which is to negotiate. I mean, you're basically asking for a remedy. You say you want them to alter the collective bargaining agreement so that they pay this money to the employees in the form of wages. I understand that there... I mean, the other alternative could be, given the apparent reason for the pension trust not wanting to get the money, is that salaries can be reduced so that the firm can make the pension payments and the economic package would be the same. But you're asking, what the real dispute is about is the remedy that you want. Well, if I'm understanding you correctly, Your Honor, that last thing that you suggested is, in fact, what the union has with many employers negotiated. In order to pay for this minimum contribution that was imposed by the pension trust, in fact, as unpalatable as it is to the union and to the employees that it represents, there have been wage reductions that have been negotiated in order to pay for that. That has been one of the options that they have done. However, the company... From what I understand, that's not what you want. You want them to pay additional salary to the employees, which they say essentially alters the agreement, in part because it's going to cost them more money since, by paying the money as wages, they're going to have to pick up the cost of Social Security tax. Well, I believe that the union in the negotiations leading up to the companies being expelled from the plan, I believe there were options that were discussed. I mean, they were discussed with this employer. They were discussed with a lot of the employers about the wage reduction. But they reached... Isn't the question who decides? Isn't the question whether it's an arbitrator that decides or some other entity? Isn't that the basic question here? That is certainly the issue. That is the underlying issue, is whether the circumstances as they exist, which is the company has been expelled from the plan, whether those circumstances have... That change in circumstances entitles the union to seek, in arbitration, a remedy that would restore the full economic benefit of the plan. I believe that it does because what we're dealing with right now is a contract in which the company is paying less for the benefit of the employees than what it agreed to. And I don't think there can simply be any dispute about that. The company has suggested that by paying withdrawal liability that it is, in fact, giving a benefit to the employees because that helps to fund an underfunded plan and ensures that in the future that there is going to be money to pay on pension benefits that have already accrued. But that's not what they agreed to in this agreement. What they agreed to in this agreement... What, in your judgment, is going to happen, in your view, is going to happen to the money that they placed in escrow, which are the payments that would otherwise be due under the terms of the collective bargaining agreement? Well, that remains to be seen. What the company wants to do with that money in escrow is they want to use it to pay their withdrawal liability, which is a statutory liability, not a contractual liability. And it's a statutory liability that was imposed when they were terminated from the plan and expelled from the plan. That's what the company wants to do with it. What we envision to be done with that money is it should be used, and what the union is requesting, it should be used for the benefit of the employees. That is wages. Now, an arbitrator may not agree with that. And I understand that, that we are not necessarily destined to win in an arbitration, but the union strongly believes that they are entitled to that arbitration, that they are entitled to let an arbitrator decide what the appropriate remedy is from what is essentially a noncompliance here. I mean, the company claims that they are willing and they remain willing to make the pension contributions, but that's not going to happen. The pension trust has made that clear. They were warned that they were going to be expelled.  They knew that was going to happen. They knew they were going to incur withdrawal liability, and that's what they chose. It happened. And so now what we're left with is a situation where the company is paying money into an escrow account, controlled by it. It's not going for the benefit of the employees. They get nothing from this. And so to answer your question, Judge Corman, what the union believes should be done, what we envision should be done is that that money should be used for the benefit of the people for whom it was negotiated, the employees. As I said, maybe an arbitrator will not agree with that, but we strongly believe that we're entitled to ask an arbitrator what should be done with that money that is no longer being able to be paid to the pension trust. I just have one more question. So you're just saying, arbitrator, this is a question, what should be done? Or are you saying give the workers a raise that's the equivalent to the amount that the company would be paying into the pension fund? Well, the union certainly believes that it should be the full amount. Now, the company has made some arguments that that would result in the company paying a higher amount because of payable taxes and such as that. Those are details about a remedy that are for an arbitrator to decide. I mean, there's two ways to look at that. As there often is in disputes, there's always two sides. The way the union looks at it is the employees should get the full benefit of what the company agreed to pay, and they would not be getting the full benefit of what they agreed to pay if there was an adjustment made to account for payable taxes. I understand that the company looks at it differently because from their standpoint, they say we only agreed to pay a certain amount, and we should only have to pay that certain amount. Again, that's fodder for arbitration. That's for an arbitrator to decide and to work out the details of that. But that does not defeat the request of the issue that is before the court right now, and that is whether the company should be compelled to arbitrate this grievance. And how do you address the phrase in the CBA arbitration clause that the arbitrator shall not have jurisdiction or authority to alter in any way the provision of the agreement? Well, first of all, the courts have interpreted, including this court, the courts have interpreted that phrase to be something that is left to an arbitrator to interpret. And as a matter of fact, if you look at the actual full phrasing of that language in the collective bargaining agreement, what it says is that on any matter that is properly submitted to an arbitrator, that the arbitrator should not have that jurisdiction. The courts have held that that contractual language is reserved for the arbitrator in the first instance to interpret, not the court. That is not a limitation on the arbitral authority or whether a dispute is arbitrable. What happens afterwards? Does the employer have a judicial remedy if he claims, hey, wait a minute, I promised to pay, I'm just picking a number, $2 an hour, and now I'm going to have to pay $2.50 an hour. And it's quite clear what I had to pay under the contract, and the arbitrator has changed my obligation under the contract. What remedy does the, do you acknowledge that the employer has a judicial remedy after the fact? I certainly do, Your Honor. Any arbitration ward can be challenged in another Section 301 action, but the standard of review in that action is strictly limited, or it's very severely limited by the standard of review that whether the award draws its essence from the collective bargaining agreement. An employer, if- Pretty vague, draws its essence from the collective bargaining agreement. I understand that. We're left with that standard that was given to us 50 years ago at this point from the Supreme Court in the Steelworkers Trilogy. But that is the remedy, and I think that's how the courts have, getting back to your question, Judge Moore, that's how the courts have looked at that language, is for the arbitrator in the first instance to interpret that. And then if there's a disagreement about the award that's been imposed, then that's subject to review by the court under the draws its essence standard again. And your red light is on. Thank you. Thank you. Good morning, Your Honors. I'm Donald Sharg, appearing on behalf of the plaintiff at Paldee, O.N. Minerals, which is better known as Carmuse. This case deals with a gateway issue, which this court earlier this month defined in Reid-Elzer as whether a concededly binding arbitration clause applies to a certain type of controversy. And our certain type of controversy is the grievance filed by the union, seeking to alter the labor contract by taking money that's designated for the pension contributions and moving it to Article 7, Section 2, which is wages. The agreement has already been altered by circumstance. You're not paying money into the pension fund. So the provision that says you should pay money into the pension fund is not being complied with. And their argument is we need some sort of a remedy for that failure,  but you're not complying with the terms of the collective bargaining agreement. But there is a remedy. I know you say it's bargaining. Bargaining. There's thousands of cases from the NLRB, from the Courts of Appeals, that talk about the importance of bargaining. And bargaining just can't be rejected because you've said we think we can go arbitration. That's a better route. So they do have a remedy. And even though Carmus. Have you offered them any? I mean, there's been no negotiation. Have you made an offer as to an alternative? What do you intend to do with the money that's in escrow? The proposal, I understand, is to pay it as withdrawal liability, but the union stopped bargaining with us. In fact, the contract expired last year, I believe, and the parties are at impasse over what to do with the money. Well, what do the workers get from you paying for withdrawal liability? They get pensions. They get their pensions shored up. That's what they get from withdrawal liability. But that's not really the issue. It's an interesting point, but it's not the issue because the issue is Article 12, Section 5, Step 6B, which says that the arbitrator has no jurisdiction and no authority to alter in any way any provision of the labor contract. But why isn't it first for the arbitrator to decide, given the dispute between the two parties, what the CBA provides and what the arbitrator's authority is in terms of providing remedies? Because this court has said many times that it's for the court to decide arbitrability. It's a question of arbitrability. The court to decide, but at what point before arbitration or after? Vic Wertz, which is a 1990 case. Timkin, which is a 1983 case, has a random dicta quote that says, yeah, this is generally. It doesn't say the word always. It doesn't say mandatory. This is generally for the arbitrator to decide arbitrability. But we know from many cases and from Vic Wertz, which is a subsequent case, in 1990, Vic Wertz says that we can come to the court and ask the court before the arbitration to decide arbitrability, and that's what we've done, and we have a right to do that. Aren't there recent Sixth Circuit cases that really give much power to the arbitrators, including en banc Sixth Circuit cases? How do you deal with those recent cases? Because you cited a 1990 early case. Well, that's a 1990 case, but there's also 2000 cases, things like that. I think those are two different issues. The authority of the arbitrator, once he or she gets the claim, the grievance, the arbitrator has great discretion, but, again, the arbitrator can't disregard the labor contract, can't go outside the bounds of the labor contract, and we're here talking about arbitrability, which is a completely different issue than I think it's Michigan. There's an arbitration case. I can't remember the name right now, but it set the rules for the authority of the arbitrator. It's different. Also, when you're talking about the provision that I quoted earlier about no jurisdiction to alter the provisions of the agreement, the earlier part of that sentence says an arbitrator to whom any grievance shall be submitted shall have jurisdiction to interpret and apply the provisions of the agreement. So why don't we look first to that, giving the arbitrator authority, and then the arbitrator decides what he can do within the scope of the CBA? Then it goes on and says, yeah, you can send grievances to the arbitrator, but the arbitrator has no jurisdiction. To alter. To alter. So that's limiting what the arbitrator can do as a remedy, but not saying the arbitrator doesn't have the power to consider the problem area. No, but this grievance is about, it's not the remedy. The remedy is later. After we raised jurisdiction of the arbitrator, then the case became a remedy case. If you look at all the paperwork, all the letters from the union before we asserted lack of jurisdiction, this grievance is about altering the labor contract. It's not about remedy. The union in a letter sent to the company said- I understand what you're about to say, but they might not prevail. I mean, why not? You could have your judicial review after the fact. They may not prevail. You could arguably, I mean, I don't understand this argument that your penalty is going to go to the benefit of the workers in any event, but you could argue after the fact that if he gives the union what they want, that he's altered the terms of the agreement. But that's not the precedent in this court. The precedent in this court is under Vic Wertz and under Mead, which is, I think, a 2000 case, that this court is the one that decides arbitrability up front if a party asks it to, and the court can't abdicate that responsibility to the arbitrator and then say, go into arbitration and then come back if you want and raise it again. We have the right to raise it at the front end, according to the precedent in this court. And the grievance, I was going to say that the grievance, each time the union spoke about the grievance, it was about altering the labor contract. It said that, please be advised, if the monies are not added to the bargaining unit employees hourly rate, such will be considered a violation of the collective bargaining agreement and agreements will be forthcoming. So that's seeking, specifically seeking to alter the contract. And Mr. Schwartz brought, didn't refer, he referred to Timken, the Timken case, but didn't really mention the name. And the Timken case is really not a good precedent. He's relying on dicta from the Timken case. And if you look at the cases that Timken relied on, none of those cases involved issues of jurisdiction over a grievance for the arbitrator. They all talked about, there were violations, there were decisions by the arbitrator that were contrary to the labor contract, outside the scope of the labor contract. And so the court was able to strike down the arbitration award because the arbitration award did not have any context with the labor contract. That would probably be our case if we had to go to arbitration. But my point is that under the precedent of the court, the Vic Wirtz case, says we have the right to come to court and say at the very front end, we shouldn't go to arbitration because this case is not arbitrable. Well, hasn't the contract been altered already? Because you are not making payments to the pension fund as required by the collective bargaining agreement, for whatever reason. It may not be your fault, but essentially, you are not complying with the terms of the collective bargaining agreement, and they say to the arbitrator, we'd like something equivalent in return. You're perfectly capable of saying the equivalent in return is for the workers to take less money per hour in wages, and you'll make higher payments to the pension trust. But that is altering the labor contract. And there's no obligation to alter the labor contract, or there's no obligation for the company to agree to the union pension fund's demand that it pay more money than it agreed to under the labor contract. Well, that's a dispute. You're not complying right now with the terms of the collective bargaining agreement. They want a remedy that is the equivalent. And why isn't that for the arbitrator to decide with you coming to court later on? Because the labor contract specifically says the arbitrator should have no jurisdiction and no authority to alter any provision of the labor contract. Is there any remedy that the union could ask for under these circumstances that would be giving jurisdiction to the arbitrator to provide? In other words, are you saying there's just no way that the union can get a remedy that is within the powers of the arbitrator here? The union has only asked for one remedy, and that remedy is really the question. I'm asking to hypothesize. Are there any other remedies that the union could ask for that would be within the scope of the arbitration clause? Not that I can think of. And they have suggested none. Because the remedy they want is to alter the labor contract. They want to take that money. They're not saying take that money and pay it to the pension fund because the pension fund's not taking it. They're saying take that money and alter the labor contract and pay it to the employees. And even if you say, okay, take off Social Security and workers' comp and all that, they're still saying take the money that's been designated for the pension fund and move that over to Article 7, Section 2 of the wages. And the contract says you can't do that. So the remedy is, no matter whether you like it or not, the remedy is negotiations. And the union has the right to negotiate with the company over what's going to happen to that money. They may not like the result. Sometimes in negotiations you get more, sometimes you get less, sometimes you get the same. So there's a position would be that if I understood you, the arbitrator couldn't say pay the money to the employees minus the Social Security and workers' compensation and whatever other additional expenses result from treating these as wages. He can't say wages minus Social Security. You pay exactly that. The equivalent. The equivalent. I mean, theoretically he could say that he would be wrong because he would be altering the labor contract. The arbitrator has no authority, no jurisdiction, and no jurisdiction is interested. Isn't it always a close case between whether you're construing something or changing it? I mean, there's a gray line. I don't think so. Because if the contract says the employee classification gets $16.69 an hour and then the arbitrator says, no, that's $21.94 an hour, that's not a construing, that's a change. But, I mean, if I heard you, if the arbitrator says you pay the same amount to the employees and to the extent that you're arguing you have some additional costs, we'll take that off the amount that you have to pay the employees. So it will be, let's say, $15 minus what is the Social Security tax now, 7.5% or whatever. That leaves you with paying the exact same amount of money that you would to the driver. It's not. Because we have infected an overtime. Because the overtime then and that $2 and whatever. But why isn't all of that technical stuff for the arbitrator to decide? In a regular contract, maybe. But we're not talking about everybody else's contract. We're talking about our contract. And our contract specifically says that the arbitrator has no jurisdiction to alter any provision of the contract. But it also says that the arbitrator has authority to interpret and apply the provisions. And if they had a grievance that was seeking to interpret or apply the grievance? Well, they're seeking to, I'm just sort of trying to establish what they might argue, would be that they're seeking to interpret and apply the provision of the agreement that required there to be contributions to the pension fund and salaries, hourly wages for the employees and resulting in a certain benefit to each employee. And this is interpreting and applying what to do when the payments are not being made to the pension fund. But they're not. They're seeking to alter the agreement. All the agreements, all the communications, all the letters say the union is seeking to alter the labor contract. Take this money, and if you don't take the money and take it from... So did the union use the word alter? I don't believe the union used the word alter. But they said the contribution should be added to the employee's labor contract. If you're adding something, you're altering it. The company is obligated to... You say the remedy here is negotiation. When will the parties negotiate a new collective bargaining agreement? They started last year. So it's ongoing right now? It is ongoing right now. If I can leave you with one concept, the court deals with jurisdiction all the time. If the court doesn't have jurisdiction over a matter, it doesn't hear the matter. Similarly, we have in the labor contract, it says the arbitrator does not have jurisdiction over a grievance to alter the labor contract. That means that the arbitrator cannot hear the matter. Thank you very much. Thank you. The final point that I'd like to make to follow up on what you mentioned, Judge Corman, is that this collective bargaining agreement has already been altered. It's been altered, and the question in this case is not whether it's going to be altered. That's already occurred. The question is whether this alteration of the collective bargaining agreement is going to stand the way that it is now, which is obviously how the company prefers it to be, or whether the company is going to have to pay the full economic package that it agreed to in the collective bargaining agreement. It is not doing that right now. I understand that it's putting money in escrow and that it's presumably not using that money, but it is not paying the full economic benefit that it agreed to in the collective bargaining agreement. That's the alteration. The question is what are we going to do about that alteration, and the union believes that it's up to an arbitrator to make that call as to what to do about it. There are all sorts of details about what could be worked out. How is that an interpretation of the collective bargaining agreement when it's a circumstance really beyond the contemplation of the parties and it's not included in the collective bargaining agreement? You're certainly correct, Your Honor, that that was not within the contemplation of the parties. Isn't that the limitation that's imposed in the collective bargaining agreement as the arbitrator's power is to interpret the collective bargaining agreement, and this is not subject to interpretation? This is an unforeseen circumstance. Two points. Unforeseen circumstances come up all the time in collective bargaining agreements. They come up all the time in contracts, as a matter of fact, also. When we look at the language of the contract, and this arbitration is governed by contractual agreements, and this is a narrow grant of arbitration rather than a broad clause. It does narrow the scope. If the parties had wanted a broad scope of arbitration, they could have put such a clause in the contract, but they did not do that. Tell me how this interprets the collective bargaining agreement when what we're dealing with is a circumstance beyond the contemplation of the parties. The union contends that the company is not compliant with the collective bargaining agreement. That's what the arbitration clause says is within the scope of an arbitrator's authority. If it's alleged that you're not complying with it, that's an arbitrable dispute. The second point is remedies for noncompliance, as the Supreme Court has held many times, are part and parcel of the arbitrator's authority that is granted. And so what we're requesting here is a remedy, which it's certainly true that it was not expressly contemplated by the parties, but that happens all the time. It's not uncommon for a contingency to arise that the parties did not contemplate. I think one example for that is the equitable resources case, which is cited in our brief, where there was a successor company that an arbitrator had imposed the collective bargaining agreement on. The parties had not contemplated that, but an arbitrator decided and interpreted the contract to impose that successor agreement or to impose the collective bargaining agreement on that successor. And that's just one of many examples. Would you agree that if the arbitrator imposed a remedy here that wound up costing them per hour more than their contributions to the pension fund required, that he would be altering the agreement? I can't agree with that, Your Honor, because, well, number one, we're speculating about what it is that the arbitrator would do. I'm giving you a hypothetical. He says you give the workers the money, and even though it's going to cost you extra money in terms of Social Security benefits, workman's compensation, you're going to wind up paying X dollars more than what the contract required you to pay the pension fund. Would that be an alteration of the contract? I don't think so, because the contract also, from the standpoint, I mean, there's two views. When you're talking about performance by one party and receipt of performance by another, sometimes those don't exactly match up. And the performing party here has an obligation to the people who are expecting a particular performance, and what those people are the employees, they expect a certain economic benefit in a certain amount, a total economic benefit. I understand that the focus that the employer wants to put on this is just on wages, but wages are not the only aspect of this case, and that's why the union believes that it should be viewed more broadly and all of the provisions of the agreement should be construed to achieve a remedy that affects the intent of the parties. Thank you very much. Thank you both for the argument. The case will be submitted. Would the clerk call the next case, please?